1

2

3

4

5

6

7

8    **UNITED STATES DISTRICT COURT**

9    **SOUTHERN DISTRICT OF CALIFORNIA**

10

| | |
|---|---|
| 11  MANCHESTER PACIFIC GATEWAY LLC, | CASE NO. 07cv1099 JM(RBB) |
| 12                                    Plaintiff, | ORDER DENYING MOTIONS TO DISMISS AND TO STRIKE |
| 13       vs. | |
| 14  CALIFORNIA COASTAL COMMISSION, et al., | |
| 15                                    Defendant. | |

16

17        Defendants California Coastal Commission ("Commission"), all twelve members

18  of the Commission (Steve Blank, Sara Wan, Dr. William A. Burke, Steven Kram, Mary

19  K. Shallenberger, Patrick Kruer, Bonnie Neely, Mike Reilly, Dave Potter, Khatchik

20  Achadjian, Larry Clark, and Ben Hueso), the Executive Director of the Commiussion

21  (Peter M. Douglas), and three Commission staff persons (Sherilyn Sarb, Deborah Lee,

22  and Diana Lilly) move to dismiss the First Amended Complaint ("FAC") pursuant to

23  Rules 12(b)(1), (2), and (6) of the Federal Rules of Civil Procedure and to strike the

24  FAC based upon California's law regarding Strategic Lawsuits Against Public

25  Participation ("SLAPP"), Cal. Code Civ. Proc. § 425.16.  Manchester Pacific Gateway

26  LLC ("MPG") opposes the motion.  For the reasons set forth below, the motions to

27  dismiss and to strike are denied.

28

**BACKGROUND**

On June 15, 2007, MPG commenced this action seeking, among other things, a declaration that the Commission "cannot require Manchester to obtain a CDP (Coastal Development Permit) as a condition to Manchester's developing the Project." (FAC ¶35). MPG contends that the Commission's position with respect to obtaining a CDP violates the Coastal Zone Management Act ("CZMA"), 16 U.S.C. §1451 et seq. The present action relates to a real estate ground lease entered into between MPG and the Navy on November 22, 2006 for the development of 16 acres of land in downtown San Diego, California, known as the Navy Broadway Complex ("NBC"). (FAC Exh. B at p. 81).

In 1987 Congress authorized the Navy to enter into a public-private venture to re-develop the NBC site. The plan allowed the federal government to retain ownership of the land and allow the Navy to obtain replacement office space at no cost to taxpayers. (FAC ¶10; Oppo. at p.2:24-25). In June 1987 the Navy and the City of San Diego entered into a Memorandum of Understanding ("MOU") concerning the development of the NBC site. The City and Navy established general guidelines for the project regarding maximum use intensity, building program, architectural standards, building form and scale, site access and parking treatment, and landscape considerations. (FAC ¶12).

In August 1990 the Navy completed a Coastal Consistency Determination of the NBC site pursuant to its statutory obligations under the Costal Zone Management Act ("CZMA"), 16 U.S.C. §1456. The Navy concluded that the project was consistent to the maximum extent possible with California's Coastal Management Program ("CCMP"). (FAC ¶14). In 1991, the Commission analyzed and considered the proposed NBC project, concluding that the NBC project was consistent to the maximum extent practicable with the CCMP. On May 7, 1991 the Commission concurred in the Navy's Federal Consistency Determination and, on October 8, 1991, the Commission issued its Adopted Findings on Consistency Determination. (FAC ¶14). The 1991

Commission Findings noted that its findings were premised on the assumption that construction of the NBC site would comply with the plans and guidelines developed between the City of San Diego and the Navy.  The 1991 Findings concluded that "no further Commission action is required for the redevelopment to proceed as presented in the consistency determination."  (FAC ¶17).

At the heart of MPG's declaratory relief claims, MPG seeks a declaration that the only "remaining approvals required of the [NBC] project are from CCDC (Centre City Development Corporation) and the City."   (FAC ¶40).   MPG alleges that the Commission asserts that it must obtain a supplemental federal consistency review and a CDP before proceeding with the NBC project.  (FAC ¶47).

Defendants now move to dismiss the complaint based upon two main grounds: (1) the action is barred by the Eleventh Amendment; and (2) the Commission may require a CDP pursuant to the Supreme Court's opinion in Granite Rock v. California Coastal Commission, 480 U.S. 572 (1987).  Defendants also move to strike the FAC under California's Anti-SLAPP law.  All motions are opposed.

## DISCUSSION

**Legal Standards**

Federal Rule of Civil Procedure 12(b)(6) dismissal is proper only in "extraordinary" cases. United States v. Redwood City, 640 F.2d 963, 966 (9th Cir. 1981).  Courts should grant 12(b)(6) relief only where a plaintiff's complaint lacks a "cognizable legal theory" or sufficient facts to support a cognizable legal theory. Balistreri v. Pacifica Police Dept., 901 F.2d 696, 699 (9th Cir. 1990).  Courts should dismiss a complaint for failure to state a claim when the factual allegations are insufficient "to raise a right to relief above the speculative level."  Bell Atlantic Corp v. Twombly, __550 U.S. __, 127 S.Ct. 1955 (2007).  The defect must appear on the face of the complaint itself.  Thus, courts may not consider extraneous material in testing its legal adequacy.  Levine v. Diamanthuset, Inc., 950 F.2d 1478, 1482 (9th Cir. 1991). The courts may, however, consider material properly submitted as part of the complaint.

07cv1099

Hal Roach Studios, Inc. v. Richard Feiner and Co., 896 F.2d 1542, 1555 n.19 (9th Cir. 1989).

Finally, courts must construe the complaint in the light most favorable to the plaintiff. Concha v. London, 62 F.3d 1493, 1500 (9th Cir. 1995), cert. dismissed, 116 S. Ct. 1710 (1996). Accordingly, courts must accept as true all material allegations in the complaint, as well as reasonable inferences to be drawn from them. Holden v. Hagopian, 978 F.2d 1115, 1118 (9th Cir. 1992). However, conclusory allegations of law and unwarranted inferences are insufficient to defeat a Rule 12(b)(6) motion. In Re Syntex Corp. Sec. Litig., 95 F.3d 922, 926 (9th Cir. 1996).

**The Eleventh Amendment**

Ordinarily, the Eleventh Amendment bars suits by a private party against a State and its agencies. Tennessee Student Assistance Corp. v. Hood, 541 U.S. 440, 446 (2004). However, actions against state officials to enjoin them from enforcing state laws or regulations which violate federal law do not offend the Eleventh Amendment. Ex Parte Young, 209 U.S. 123 (1908); Flint v. Dennison, 488 F.3d 816, 825 (9th Cir. 2007) ("suit for prospective injunctive relief provides a narrow, but well-established, exception to Eleventh Amendment immunity"). By violating federal law, individual state officials are stripped of immunity and may be sued personally for the consequences of their illegal conduct. Young, 209 U.S. at 160.

"An allegation of an ongoing violation of federal law where the requested relief is prospective is ordinarily sufficient to invoke the Young fiction." Idaho v. Coeur d'Alene Tribe of Idaho, 521 U.S. 261, 281 (1997). In Idaho, the Coeur d'Alene Tribe brought an action against the state of Idaho, various state agencies, and numerous state officials in their individual capacities. The Tribe sought a declaratory judgment establishing its entitlement to exclusive use and possession of certain submerged lands under Lake Coeur d'Alene. The District Court held that the Eleventh Amendment bared certain claims and dismissed the claim for injunctive relief on the merits. The Ninth Circuit reversed in part and affirmed in part, holding that the Young doctrine

allowed the claims for declaratory and injunctive relief to proceed against the state. The Supreme Court reversed, emphasizing that a case-by-case approach must be taken when applying the Young doctrine to ensure "a careful balancing and accommodation of state interests." Id. at 278. Following an analysis and review of the historical development of the sovereign attributes of navigable waters, the development of the equal footing doctrine as the various states joined the Union, and a state's unique interests in such lands, the Supreme Court concluded that lands underlying navigable waters have historically been considered sovereign lands and form an integral attribute of sovereignty. Id. at 283 - 284. The court also emphasized that Idaho had a unique interest in the public waters of Lake Coeur d'Alene and adopted statutes expressly preserving the waters for public use and enjoyment. Id. at 287. The relief sought by the Tribe, characterized by the Supreme Court as "the functional equivalent of a quiet title action," directly implicated historically strong state interests. While stressing the continued vitality of the Young doctrine, the Supreme Court concluded that "particular and special circumstances" supported Idaho's unique interests in the land. Id. at 287. These paramount sovereign interests outweighed the interests articulated in Young and allowed "Idaho to rely on its Eleventh Amendment immunity and to insist upon responding to these claims in its own courts. Id. at 287-88.

Here, in contrast to Idaho, Defendants fail to articulate particular and special circumstances warranting the setting aside of the Young doctrine. MPG alleges that Defendants continue to violate the CZMA and seek prospective relief only to remedy the alleged federal violation. These allegations are sufficient to implicate the Young doctrine. Idaho, 521 U.S. at 281 ("An allegation of an ongoing violation of federal law where the requested relief is prospective is ordinarily sufficient to invoke the Young fiction."). To avoid application of Young, Defendants must identify sufficiently compelling reasons to invoke the Eleventh Amendment bar - - something they fail to do. Consequently, the court concludes that the Eleventh Amendment does not bar this action.

Finally, Defendants contend that the individual defendants are not proper parties to the action.  The court rejects such argument as the individual defendants are sued in their official capacity and MPG only seeks prospective relief, not damages.  See Verizon MD Inc. v. Public Serv. Comm'n of MD, 535 U.S. 535 (2002) (rejecting Eleventh Amendment bar under Young and permitting action to go forward against state commissioners of the Maryland Public Service Commission); Exxon Corp. v. Fischer, 807 F.2d 842, 845 (9th Cir. 1987) (finding that the Eleventh Amendment did not bar claims against individual members and executive director of the California Coastal Commission, sued in their official capacities).

In sum, the motion to dismiss the action based upon the Eleventh Amendment is denied.

**The NBC Project Is Not Excluded from the Coastal Act**

Defendants contend, as a matter of law, that the Commission may require a permit for the NBC project.  Defendants argue that there has been no violation of the CZMA and therefore California's Coastal Act of 1976 authorizes the Commission to exercise jurisdiction over the NBC property.  By way of background, on November 7, 1977, the federal government approved California's CCMP which included the California Costal Act of 1976.  The CZMA definition of coastal zone provides that the only lands "[e]xcluded form the coastal zone are those lands the use of which is by law subject solely to the discretion of or which is held in trust by the Federal Government, its offices or agents." 16 U.S.C. §1453(1).

Defendants argue that the NBC property "is not under the sole discretion of the federal government or held in trust by it," and therefore the property is not excluded from the scope of the Coastal Act of 1976.  Defendants cite portions of the Navy/MPG lease agreement to support their argument that MPG, as lessee to the Real Estate Ground Lease, has some discretion with respect to the use of the property.  Defendants do not cite any authority interpreting the contours of the phrase "subject solely to the discretion of" the Federal Government.  However, Defendants argue that California

Coastal Com. v. Granite Rock Co., 480 U.S. 572 (1987) supports their argument that the Commission may require a permit for private development on federal lands. There, pursuant to the Mining Act of 1872, Granite Rock held certain unpatented rights to mine minerals on federal land and the Coastal Commission sought to regulate Granite Rock's development of the site. Id. at 575. The issue before the court was whether certain federal statutes and regulations, including the CZMA, preempted the Coastal Act of 1976. The Ninth Circuit concluded that the Coastal Act's CDP requirement was preempted by the Mining Act of 1872 because "an independent state permit system to enforce state environmental standards would undermine the Forest Service's own permit authority." Id. at 577. The Supreme Court reversed, concluding that "Congress specifically disclaimed any intention to pre-empt pre-existing state authority in the CZMA . . . [and therefore] the CZMA does not automatically pre-empt all state regulation of activities on federal lands." Id. at 593.

Defendants' arguments, the court concludes, do not establish that MPG fails to state a claim for declaratory relief as a matter of law. Viewed in the best light to MPG, the FAC adequately alleges that the NBC property is subject to the discretionary control of the federal government such that the NBC property may ultimately, upon development of a complete evidentiary record, be excluded from definition of coastal zone. MPG alleges that the NBC Project was authorized by Congress, and that the legislation required the Navy to form a joint venture between the Navy and a private developer. (FAC ¶10). The legislation authorized the Navy to enter into a long-term lease with the private developer and the Memorandum of Understanding between the Navy and the City of San Diego established guidelines regarding the maximum use intensity, building program, architectural standards, and other project parameters. (FAC ¶ 12). Further, MPG alleges that in August 1990, the Navy filed with the Commission a CZMA Federal Consistency Determination for the NBC project site. The Navy, pursuant to §307(c) of CZMA, also analyzed the NBC project for consistency with the CZMA, including the Coastal Act of 1976. (FAC ¶13). The Commission concurred

07cv1099

with the Navy's consistency review.  (FAC ¶ 14).

Based upon the FAC's allegations, the court concludes that MPG  adequately alleges that the federal government exercised deliberate, extensive discretion and control over the development and planning of the NBC project such that the NBC site may be excluded from the scope of CZMA.  The present case does not raise any preemption argument and is factually dissimilar to <u>Granite Rock</u>.  There, a private company planned and conducted mining related activities without Federal involvement - there was simply no argument challenging the exercise of the Federal Government's discretion over the property because it did not exercise any discretion over the mining related activities.  Here, in contrast, the Federal Government is the moving force behind the planning and development of the NBC project and the Navy acted pursuant to legislative mandate.[1]

Finally, the court notes that whether the Navy exercised sufficient discretion over the NBC site to fall outside the scope of 16 U.S.C. §1453(1) raises mixed legal and factual issues not properly resolved on a motion to dismiss.[2]  Accordingly, the motion

---

[1] The court notes that the parties do not attempt to define the contours of what is meant by the phrase "subject solely to the discretion of or which is held in trust by the Federal Government, its offices or agents." 16 U.S.C. §1453(1).  Here, use of the NBC property was subject to federal legislation authorizing the Navy to enter into a development contract with a private party and authorizing the Navy to set the project's parameters in conjunction with the City of San Diego. (FAC ¶¶1-12).  On one level it could be argued that Federal Government has exercised sole discretion over the NBC project by enacting legislation and by selecting a private developer and working with the City to define the project's parameters.  On the other hand, one could argue that both the private developer and the City exercise discretion to some degree in defining the scope of the project and therefore the discretion may not be "solely" with the Federal Government.  This issue is raised to highlight the court's concern regarding the interpretation and application of §1453(1) to the present action.

[2] Defendants raise two other arguments in support of their motion to dismiss, neither of which is persuasive. First, Defendants contend that there is no private right of action under the CZMA and therefore all claims must be dismissed.  Defendants cite several authorities holding that there is no private right of action under CZMA.  The difficulty with Defendants' argument is that the present action is brought pursuant to the Declaratory Judgment Act, not the CZMA.  MPG neither seeks to assert a claim under CZMA nor obtain a CZMA related remedy.  Consequently, the motion to dismiss on this ground is denied.  Second, "[t]o the extent Manchester contends that [Commission] staff improperly refused to file its coastal development permit application," (Motion at p.16:11-13), Defendants argue that the court must dismiss the action because MPG failed to exhaust available state administrative and judicial remedies.  This argument appears misplaced as MPG does not contend that Defendants wrongfully failed to file its application.  Rather MPG challenges the ability of Defendants to require a CDP under the Coastal Act and whether a supplemental CZMA consistency review is

07cv1099

1    to dismiss on the above cited grounds is denied without prejudice subject to a further

2    showing.[3]

3    **Anti-SLAPP**

4         Defendants contend that the FAC should be stricken under California's Anti-

5    SLAPP law, Cal. Code Civ. Proc. § 425.16.  Defendants generally argue that MPG

6    seeks declaratory relief and that such claims "preclude defendants from exercising their

7    rights of petition and free speech; [and] that suffices for purposes of the Anti-SLAPP

8    law." (Reply at p.10:9-10).  The Anti-SLAPP law was enacted in response to concerns

9    about civil actions aimed at private individuals to deter or punish them for exercising

10   their political or legal rights.  United States v. Lockheed Missiles & Space Co., Inc.,

11   190 F.3d 963, 970 (9th Cir. 1999).  As explained in Lockheed Missiles,

12          [t]he hallmark of a SLAPP suit is that it lacks merit, and is brought with
            the goals of obtaining an economic advantage over a citizen party by
13          increasing the cost of litigation to the point that the citizen party's case
            will be weakened or abandoned, and of deterring future litigation.
14
     Id. at 970-71.
15
          Here, the present action does not reflect any of the hallmarks of a SLAPP suit
16
     because the action ostensibly has merit and MPG does not seek an economic advantage
17
     over Defendants.  Significantly, MPG has alleged potentially meritorious claims, thus
18
     removing the present case from the Anti-SLAPP paradigm.  To state a claim for
19
     declaratory relief, MPG must sufficiently allege: (1) an actual controversy within the
20
     meaning of Article III; and (2) that the actual controversy relates to a claim within the
21
     court's subject mater jurisdiction, upon which relief could be granted.  28 U.S.C.
22
     §2201(a); Calderon v. Ashmus, 523 U.S. 740, 745-47 (1998).  Stated another way, the
23
     question is whether there is a "substantial controversy, between parties having adverse
24
     legal interests, of sufficient immediacy and reality to warrant the issuance of a
25

26   _____

27   required under the circumstances.

28        [3] Defendants also argue that the Commission may require a consistency determination or a
     CDP based upon changed circumstances. (FAC Exh. A at 43). The court declines to reach such a fact
     intensive inquiry on a motion to dismiss.

declaratory judgment."   <u>Maryland Cas. Co. v. Pacific Coal & Oil Co.</u>, 312 U.S. 270, 273 (1941).

Defendants do not challenge the FAC on the ground that MPG fails to identify a substantial controversy between the parties of sufficient immediacy to warrant declaratory relief.  The purpose of the anti-SLAPP law is to address judicial abuse by targeting lawsuits "brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances."  Cal. Civ. Proc. Code § 425.16(a).  While the FAC generally challenges Defendants' assertion of regulatory authority over the NBC project, it does not primarily seek to limit Defendants' first amendment rights.  Rather, the present action seeks to prevent avoidable damages without waiting until the Commission takes injurious action against MPG.  <u>See</u> <u>Seattle Audubon Soc'y v. Moseley</u>, 80 F.3d 1401, 1405 (9th Cir. 1996) (purpose of the Declaratory Judgment Act is to give litigants an early opportunity to resolve federal issues to avoid "the threat of impending litigation").  Seen in this light, Defendants fail to establish that the FAC should be stricken.

In sum, the court denies the motion to strike based on anti-SLAPP law.

**IT IS SO ORDERED.**

DATED:  October 2, 2007

_____
Hon. Jeffrey T. Miller
United States District Judge

cc:        All parties

07cv1099