1

2

3

4

5

6

7

8               **UNITED STATES DISTRICT COURT**

9               **SOUTHERN DISTRICT OF CALIFORNIA**

10

11   MANCHESTER PACIFIC GATEWAY              CASE NO. 07cv1099 JM(RBB)
     LLC,
12                                           ORDER GRANTING  MOTION FOR
                                  Plaintiff,  PARTIAL SUMMARY JUDGMENT
13         vs.

14   CALIFORNIA COASTAL COMMISSION,
     et al.,
15                               Defendants.

16

17         Plaintiff Manchester Pacific Gateway LLC ("MPG") moves for partial summary

18   judgment on its first two claims for declaratory relief seeking (1) a declaration that the

19   Navy Broadway Complex ("NBC") is federally owned land subject solely to federal

20   discretion such that the NBC site is excluded from the definition of coastal zone under

21   the Federal Coastal Zone Management Act of 1972, 16 U.S.C. §1451 et seq. ("CZMA")

22   and (2) a declaration that Defendants cannot require MPG to obtain a Coastal

23   Development Permit ("CDP") under state law.   Defendants California Coastal

24   Commission ("Commission"), all twelve members of the Commission (Steve Blank,

25   Sara Wan, Dr. William A. Burke, Steven Kram, Mary K. Shallenberger, Patrick Kruer,

26   Bonnie Neely, Mike Reilly, Dave Potter, Khatchik Achadjian, Larry Clark, and Ben

27   Hueso), and the Executive Director of the Commiussion (Peter M. Douglas) oppose the

28

motion.[1]  For the reasons set forth below, the motion for partial summary judgment is granted.

### BACKGROUND

On June 15, 2007, MPG commenced this action seeking, among other things, a declaration that the Commission "cannot require Manchester to obtain a CDP as a condition to Manchester's developing the Project." (FAC ¶35). MPG contends that the Commission's position with respect to obtaining a CDP violates CZMA.  The present action relates to a real estate ground lease entered into between MPG and the Navy on November 22, 2006 for the development of the NBC project on 16 acres of land located in downtown San Diego.  (NOL, Exhs. C, D).

In 1987 Congress authorized the Navy to enter into a public-private venture to re-develop the NBC site.  The plan allowed the federal government to retain ownership of the land and allow the Navy to obtain replacement office space at no cost to taxpayers. (FAC ¶10).  In June 1987 the Navy and the City of San Diego entered into a Memorandum of Understanding ("MOU") concerning the development of the NBC site.  The City and Navy established general guidelines for the project regarding maximum use intensity, building program, architectural standards, building form and scale, site access and parking treatment, and landscape considerations. (NOL, Exh. E).

In August 1990 the Navy completed a Coastal Consistency Determination of the NBC site pursuant to its statutory obligations under the CZMA.  The Navy concluded that the project was consistent to the maximum extent possible with California's Coastal Management Program ("CCMP").  (NOL, Exh. F).  In 1991, the Commission analyzed and considered the proposed NBC project, concluding that the NBC project was consistent to the maximum extent practicable with the CCMP. (NOL, Exh. G). On May 7, 1991 the Commission concurred in the Navy's Federal Consistency Determination and, on October 8, 1991, the Commission issued its Adopted Findings on Consistency

---

[1] On January 15, 2008 the parties jointly dismissed three Commission staff persons (Sherilyn Sarb, Deborah Lee, and Diana Lilly) from the First Amended Complaint ("FAC").

1   Determination.  Id.  The 1991 Commission Findings noted that its findings were
2   premised on the assumption that construction of the NBC site would comply with the
3   plans and guidelines developed between the City of San Diego and the Navy.  The 1991
4   Findings concluded that "no further Commission action is required for the
5   redevelopment to proceed as presented in the consistency determination."  Id.

6        MPG moves for partial summary judgment on the ground that the NBC property
7   is excluded from the definition of coastal zone under the CZMA and therefore
8   defendant Commission may not require a CDP for the project.  The Commission
9   opposes the motion.

10                              **DISCUSSION**
11  **Legal Standards**

12        A motion for summary judgment shall be granted where "there is no genuine
13  issue as to any material fact and . . . the moving party is entitled to judgment as a matter
14  of law."  FED. R. CIV. P. 56(c); Prison Legal News v. Lehman, 397 F.3d 692, 698 (9th
15  Cir. 2005).  The moving party bears the initial burden of informing the court of the
16  basis for its motion and identifying those portions of the file which it believes
17  demonstrates the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett,
18  477 U.S. 317, 323 (1986).  There is "no express or implied requirement in Rule 56 that
19  the moving party support its motion with affidavits or other similar materials negating
20  the opponent's claim."  Id. (emphasis in original).  The opposing party cannot rest on
21  the mere allegations or denials of a pleading, but must "go beyond the pleadings and by
22  [the party's] own affidavits, or by the 'depositions, answers to interrogatories, and
23  admissions on file' designate 'specific facts showing that there is a genuine issue for
24  trial.'"  Id. at 324, 106 S. Ct. At 2553 (citation omitted).  The opposing party also may
25  not rely solely on conclusory allegations unsupported by factual data.  Taylor v. List,
26  880 F.2d 1040, 1045 (9th Cir. 1989).

27        The court must examine the evidence in the light most favorable to the non-
28  moving party.  United States  v. Diebold, Inc., 369 U.S. 654, 655 (1962).  Any doubt

as to the existence of any issue of material fact requires denial of the motion.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 255 (1986).  On a motion for summary judgment, when "'the <u>moving party</u> bears the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence were uncontroverted at trial.'"  <u>Houghton v. South</u>, 965 F.2d 1532, 1536 (9th Cir. 1992) (emphasis in original) (quoting  <u>International Shortstop, Inc. v. Rally's, Inc.</u>, 939 F.2d 1257, 1264-65 (5th Cir. 1991), <u>cert. denied</u>, 502 U.S. 1059 (1992)).

**The Motion**

The issue before the court is whether or not the NBC is excluded from CZMA's statutory definition of "coastal zone."  The parties generally agree that the exclusion of the NBC from the scope of CZMA limits the Commission's ability to require a CDP.[2] Conversely, if the NBC is located within the coastal zone, then the Commission may require a CDP.  The CZMA definition of coastal zone provides that the only lands "[e]xcluded from the coastal zone are those lands the use of which is by law subject solely to the discretion of or which is held in trust by the Federal Government, its officers or agents." 16 U.S.C. §1453(1). Breaking the statute into elements, the parties dispute whether the NBC is "(1) land[] the use of which (2) is by law subject solely to the discretion of . . . the Federal Government."  While there is substantial overlap between these two elements, each is discussed in turn.

"In construing a statute in a case of first impression, we look to the traditional signposts of statutory construction: first, the language of the statute itself; second, its legislative history, and as an aid in interpreting Congress' intent, the interpretation given to it by its administering agency," if any.[3]  <u>Brock v. Writers Guild of Am., W., Inc.</u>, 762 F.2d 1349, 1353 (9th Cir.1985)(internal citations omitted).  The court examines "not only the specific provision at issue, but also the structure of the statute as a whole,

---

[2] Even if the NBC is not subject to a CDP, in the ordinary course, the NBC is subject to the consistency provisions of CZMA.  <u>See</u> 16 U.S.C. §1456.

[3] The parties do not cite any authorities that have directly addressed the interpretation and application of the disputed statutory language to circumstances similar to those at bar.

07cv1099

1   including its object and policy." Children's Hosp. & Health Ctr. v. Belshe, 188 F.3d

2   1090, 1096 (9th Cir.1999). If the plain meaning of the statute is unambiguous, that

3   meaning is controlling and legislative history is not examined unless "the legislative

4   history clearly indicates that Congress meant something other than what it said."

5   Carson Harbor Village, Ltd. v. Unocal Corp., 270 F.3d 863, 877 (9th Cir.2001) (en

6   banc). If the statutory language is ambiguous, the court examines legislative history.

7   United States v. Daas, 198 F.3d 1167, 1174 (9th Cir.1999).

8           The court concludes that the statutory language -- "land[] the use of which is by

9   law subject solely to the discretion of . . . the Federal Government," 16 U.S.C. §1453(1)

10  -- is sufficiently imprecise to require an examination of pertinent legislative history. As

11  noted in its previous order on Defendant's Motion to Dismiss, on one level it could be

12  argued that the Federal Government has exercised sole discretion over the use of the

13  NBC project by enacting legislation, by selecting a private developer, and by working

14  with the City to define the project's parameters. On the other hand, one could argue

15  that both the private developer and the City exercise discretion to some degree in

16  defining the scope of the project and therefore the discretion may not be "solely" with

17  the Federal Government.

18          Looking to the legislative history, the Senate Report indicates that the coastal

19  zone exclusion provision does not "extend state authority to land subject solely to the

20  discretion of the Federal Government such as national parks, forest, and wild-life

21  refuges, Indian reservations and defense establishments." S.Rep. 92-753, at 8 (1972),

22  reprinted in 1972 U.S.C.C.A.N. 4776, 4783. This legislative history identifies broad

23  and diverse categories of uses of federal lands that are excluded from the CZMA even

24  though those uses may involve significant private activities.

25          Lastly, in ascertaining the meaning of the statute, the court considers the

26  interpretation given to it by its administering agency. Brock, 762 F.2d at 1353. Here,

27  the Secretary of the Navy takes the position that the Commission does not possess

28  jurisdiction to require a CDP, presumably because the NBC site falls outside CZMA's

definition of coastal zone. (NOL, Exh. D at p.45, §45). This is consistent with the
Secretary's view that the Commission's future role is limited to determining whether
changed circumstances impact the August 21, 1990 consistency review. Id.
Furthermore, National Oceanic and Atmospheric Administration ("NOAA"), the agency
charged with administering the CZMA, requires that all states exclude federal lands
from their coastal zones: "[t]he boundary of a State's coastal zone must exclude lands
owned, leased, held in trust or whose use is otherwise by law subject solely to the
discretion of the federal Government, its officers or agents." 15 C.F.R. §923.33(a).

In light of the statutory language, legislative history, and the views of the
administrative agency charged with administering CZMA, the court addresses the
elements of the statute. The first element, "lands the use of which," refers to the type
of use given to federal lands  This is a particularly broad definition of "use" that is far
broader than the terms land-use regulation or planning.  Land-use regulation generally
refers to the use and development of land

> which generally focus on four aspects of land use: (1) the type of use, such
> as whether it will be used for agricultural, commercial, industrial, or
> residential purposes; (2) the density of use, manifested in concerns over
> the height, width, bulk, or environmental impact of the physical structures
> on the land; (3) the aesthetic impact of the use, which may include the
> design and placement of structures on the land; and (4) the effect of the
> particular use of the land on the cultural and social values of the
> community, . . .

Peter W. Salsich Jr., Land Use Regulation: A Legal Analysis and Practical Application
of Land Use Law 1 (2d ed. 2003). The legislative history reveals that Congress
intended an expansive view of the term "use" as Congress specifically identified such
uses as "national parks, forests, and wild-life refuges, Indian reservations and defense
establishments." S.Rep. 92-753, at 8. The broad brush uses identified by Congress
refer to an expansive view of the term "use," and do not relate to the specific and
narrow meaning given to the term "land-use."

The Commission argues that the term "use," for purposes of 16 U.S.C. §1453(1),
must be limited "to the Navy's sole use." (Oppo. at p. 15:6). As the lease provides that
MPG has exclusive use and possession over a portion of the NBC site, (NOL, Ex. D.

P.31), the Commission concludes that the NBC is not limited to the "Navy's sole use." The court rejects such an argument for two reasons.  First, the term "solely" modifies statutory language bearing on discretion, and not on use. The statute reads "land[] the use of which is by law subject solely to the discretion of . . . the Federal Government." Second, the uses identified by Congress, "national parks, forests, and wild-life refuges, Indian reservations and defense establishments,"  S.Rep. 92-753, at 8, frequently involve the participation of private parties.  For example, the uses identified in the legislative history inevitably involve private involvement for the planning, design, operation and construction of numerous activities on federal lands such as accommodations, facilities, concessions, procurement, and services. See e.g., 48 C.F.R. § 2.101 (an "acquisition" is defined by the Federal Acquisition Regulations  as "the acquiring by contract with appropriated funds of supplies or services (including construction) by and for the use of the Federal Government through purchase or lease"); 16 U.S.C. §§1a-2(k)(1) (Secretary of the Interior authorized to enter into leases for "the use of buildings and associated property administered by the Secretary as part of the National Park System); 10 U.S.C. §2353(a) (authorizing military to contract for research and development facilities); 10 U.S.C. § 2809(a) (authorizing Secretary to enter into contracts for the construction, management and operation of facilities on or near military installations).  Consequently, the court concludes that the involvement of private parties in the design, construction, leasing and operation of a federal project is not inconsistent with a determination that the project is a "use" within the meaning of 16 U.S.C. §1453(1).  The design, development, and construction of the NBC site is for the express purpose of obtaining administrative facilities for the Navy's use.  Pub. L. No. 99-661, §2732.  This is so because the focus of  16 U.S.C. §1453(1) is on the use of federal lands, and not the use of private parties to accomplish federal objectives.

Next, the court must determine whether the use of NBC project is subject "solely to the discretion of . . . the Federal Government."  In determining whether the use or uses of the NBC fall within the sole discretion of the Federal Government, this court

finds that consideration of the following factors provide an appropriate analytical framework: (1) the legislative mandate authorizing the development of NBC site; (2) the historic use of the property;[4] and (3) the degree of discretionary oversight exercised over the NBC at the highest agency level.   The legislation authorizing the NBC provides substantial support that the Federal Government exercised sole discretion over the use of the NBC.  Congress, acting through its legislative mandate, specifically provided that the Secretary of the Navy "may" enter into a long-term lease of the property and assist the private party lessees to obtain financing for the project.  Pub. L. 99-661, §2732(a)(2).  Congress also dictated that in consideration for a long term lease of the NBC property to a private party, the Navy would obtain, free of charge (or at minimal cost), government administrative facilities.  Id, §2732(b).  The legislation also directed that the Secretary of the Navy develop the property "in accordance with detailed plans and terms of development which have been duly formulated by the Secretary and the San Diego community through the San Diego Association of Governments' Broadway Complex Coordinating Group."  Id, §2732(c).  Moreover, the legislation specifically provides that any lease for the NBC facilities "may provide for the operation and maintenance of such facility by the private developer."  Id, §2732(f).

The Commission argues that the NBC is not subject to the sole discretion of the federal government because "federal law and the lease agreement adopted pursuant to federal law expressly confer significant discretionary authority over the NBC project to non-federal entities."  (Oppo. at p.15:25-27).  Clearly, Congress has directed the Secretary of the Navy to develop the site in accordance with the input from "the San Diego community through the San Diego Association of Governments' Broadway Complex Coordinating Group."  Pub. L. 99-661, §2732(b)(C)(2).  It is also true that MPG has had a substantial role in planning the contours of the NBC and will continue to do so throughout the construction and operational phases of the project.  Critically, however, the community input and private planning activities are called for by the

---

[4] In this case, the NBC site has historically been used exclusively by the Navy.

Federal Government exercising its sole discretion through legislation.  Moreover, the project's parameters, in the broadest sense - as mandated by legislation,  specifically provide for the use of private parties to accomplish the federal objective to construct Navy administrative facilities and do not in any way undermine the Federal Government's exercise of sole discretion over the use of federal lands.  The statutory requirement of 'sole discretion' relates to the fundamental and threshold determination of how the federal land at issue is to be used.

There is no doubt that MPG, and others, exercise, and will continue to exercise, substantial decision-making authority in the implementation of the project as mandated by federal legislation through the design, construction, and operation of the NBC.  The decision-making of MPG, however, consists of a different species of judgment than that exercised by Congress or the Secretary of the Navy.   Discretion, as commonly understood, means simply "the power or right to decide or act according to one's own judgment."  Abatie v. Alta Health & Life Ins. Co., 458 F.3d 955,958 (9th Cir. 2006).  The Federal Government exercised its sole discretion in two ways: one legislative and the other administrative.   First, on the legislative front Congress authorized the Secretary of the Navy to jointly develop the NBC, subject to the general parameters of the project as identified in the legislation.   Pub. L. 99-661, §2732.   Indeed, the legislative declaration was akin to a mission statement and reflects the type of discretion contemplated by CZMA.  Second, the highest administrative officer, the Secretary of the Navy, exercised his discretion by, among other things, deciding to proceed with the NBC.

Finally, and not insignificantly, a narrow interpretation of the language "solely," as advocated by the Commission, has the potential to discourage, rather than encourage, federal authorities to solicit input from local planning agencies.  If participation by urban planning groups, outside contractors, and concerned citizens in federal-use projects subjects the project to potentially onerous state environmental regulations (and any concomitant delay associated with a CDP), federal agencies may seek to limit the input of interested groups.  Any such potential loss of the input from local planning

agencies, such as that provided herein by the San Diego Association of Governments' Broadway Complex Coordinating Group. and the City of San Diego, could result in the loss of valuable intelligence, experience, insight, community involvement, and guidance.  Furthermore, the court notes that the imposition of a CDP requirement in this case - - based solely upon the involvement of a lessee-developer like MPG - - may limit the Federal Government's future ability to seek innovative solutions to obtain defense establishments at ostensibly little or no cost to taxpayers.

In sum, the court concludes that the NBC is excluded from CZMA's definition of coastal zone.  Consequently, the court grants summary judgement in favor of MPG, and against the Commission, on its first two claims for declaratory relief.

**The Property Clause**

Although MPG prevails on its motion for summary judgment, the court briefly addresses and rejects one argument made by MPG.  To the extent MPG argues that the Property Clause of the U.S. Constitution prohibits a state's ability to regulate any federally owned lands, the Supreme Court in <u>Kleppe v. New Mexico</u>, 426 U.S. 529 (1976) rejected such an argument.  In <u>California Coastal Com. v. Granite Rock Co.</u>, 480 U.S. 572 (1987) the Supreme Court directly addressed the CZMA in context of the Property Clause.  While the Supreme Court noted that the Property Clause invests unlimited power in Congress over use of federal lands, it also concluded that Congress, by enacting the CZMA, contemplated state environmental oversight over coastal zones. <u>Id.</u> at 580.  Consequently, the CZMA, and not the Property Clause, provides the framework for analyzing environmental review issues in coastal areas.

**The California Coastal Act**

The Commission largely argues that the CZMA and California's Coastal Act are separate bodies of law and that the Coastal Act's definition of coastal zone is broader than CZMA's definition and includes all federal coastal lands.  Because (1) the state's definition is broader than the federal one and (2) the agency responsible for overseeing the CZMA, NOAA, approved the State's 1978 amendments to the Coastal Act, the Commission concludes that the CDP requirements apply to the NBC.  Even assuming

that the Commission's representation about the Coastal Act's definition is a correct statement of California law, <u>see</u> Cal. Pub. Resources Code §30008, the Supremacy Clause trumps conflicting state laws. <u>See</u> <u>Gonzales v. Raich</u>, 545 U.S. 1 (2005) ("The Supremacy Clause unambiguously provides that if there is any conflict between federal and state law, federal law shall prevail."). Consequently, the court rejects the argument that the Coastal Act's definition of coastal zone applies under the present circumstances.

Alternatively, the Commission argues that the NBC site is not excluded from the CZMA because (1) only a portion of the property will be occupied by the Navy's administrative facilities and (2) non-federal entities exercise "significant discretionary authority over the NBC project." (Oppo. at p.15:26-27). The court rejects these arguments for the following reasons, as more fully set forth above: (1) the focus of the statute is on the federal use of federal lands, and not the use of private parties to accomplish federal objectives and (2) the Federal Government, through Congressional and agency action, acted in its sole discretion by legislative mandate and agency action to define the use of the NBC and to permit the Secretary of the Navy to jointly develop the NBC in conjunction with a private developer.

In sum, for the above stated reasons the court grant's MPG's motion for partial summary judgment, finding that the Commission does not have the authority to require a CDP for the NBC site. The court declares that the Commission may not require a CDP for the NBC. This ruling should not be interpreted by the parties to mean that the Commission cannot engage in or require further consistency review proceedings. The court expresses no opinion on that potential question and recognizes that the parties reserve their respective positions regarding such issues.

**IT IS SO ORDERED.**

DATED: April 25, 2008

_____
Hon. Jeffrey T. Miller
United States District Judge

cc:          All parties

- 11 -

07cv1099